UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **RUFUS HUFF,** | ) ) ) ) ) |  |
| Plaintiff | ) ) |  |
| v. | ) ) ) | Case No. 18-cv-10623-DJC |
| **MASSACHUSETTS BAY COMMUTER RAILROAD COMPANY,** | ) ) ) |  |
| Defendant. | ) ) ) |  |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                     **October 22, 2019**

### I.   Introduction

Plaintiff Rufus Huff ("Huff") filed this lawsuit against his former employer, Massachusetts Bay Commuter Railroad Company ("MBCR") alleging violations of the Federal Employer's Liability Act ("FELA"), 45 U.S.C. §§ 51 *et seq.* D. 1. MBCR has moved for summary judgment. D. 17. For the reasons stated below, the Court DENIES the motion.

### II.  Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The movant "bears the burden of demonstrating the absence of a genuine issue of material fact."

Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in his pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which [he] would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in [his] favor." Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'" Id. (quoting Anderson, 477 U.S. at 249) (alteration in original). When assessing a motion for summary judgment, the Court will not consider "conclusory allegations, improbable inferences, and unsupported speculation." Galloza v. Foy, 389 F.3d 26, 28 (1st Cir. 2004) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

### III.  Factual Background

The following facts are drawn primarily from MBCR's memorandum of law in support of its motion for summary judgment, D. 18,[1] MBCR's statement of undisputed material facts, D. 20, Huff's memorandum of law in opposition of MBCR's motion for summary judgment,[2] D. 21, and other supporting documents and are undisputed unless otherwise noted. Pursuant to Local Rule 56.1 "[m]aterial facts of record set forth in the statement required to be served by the moving party

---

[1] In addition to filing a separate statement of undisputed material facts, MBCR's memorandum of law in support of its motion for summary judgment includes an undisputed fact section. D. 18 at 2-6.

[2] Huff included a "Counter Statement of Material Facts" in his opposition, but no response to the numbered paragraphs in MBCR's statement of undisputed material facts. D. 21 at 2-7.

will be deemed for purposes of the motion to be admitted by opposition parties unless controverted by the statement required to be served by opposing parties." Local Rule 56.1.

Huff is a seventy-year-old man who began working for MBCR in April 2007. D. 20, ¶ 1; D. 21 at 1. Huff spent just over seven years working at MBCR, ending his employment with the company in June 2014. D. 20, ¶ 5; D. 21 at 2. While employed at MBCR, Huff held various positions within the Track/Engineering Department, including working as a trackman, watchman and crossing tender. D. 20, ¶¶ 7-9; D. 21 at 2-3. Prior to his employment with MBCR, Huff spent approximately twenty-eight years working as a laborer at Boston Edison, retiring from his position in 1998. D. 20, ¶ 3. While an employee of MBCR, Huff was provided with safety rules to follow and received extensive safety training. D. 18 at 5. MBCR provided Huff with personal protective equipment to wear while he worked, which included a hard hat, safety glasses, steel-toe boots, and gloves. Id.; D. 21-1 at 13. MBCR also had a Safety Committee comprised of union and management personnel to address any safety issues that arose. D. 18 at 5.

Huff first consulted his primary care physician, Dr. Robert Muldoon, in late 2014 regarding discomfort he was experiencing in his right hand. D. 18 at 2; D. 21 at 14. Dr. Muldoon referred Huff to an orthopedic surgeon, Dr. Marvin Rosen, whom Huff met with on December 4, 2014. D. 18 at 2-3; D. 21 at 7. Following testing, Dr. Rosen diagnosed Huff with right carpal tunnel syndrome on January 21, 2015. D. 20, ¶ 10; D. 21 at 14. Huff underwent a right carpal tunnel release surgical procedure performed by Dr. Rosen on May 29, 2015. D. 20, ¶ 12, D. 21 at 14. Following the recurrence of his symptoms, Huff underwent a second right carpal tunnel release surgery on February 1, 2018, performed by a different orthopedic surgeon, Dr. Raghuveer Muppavarapu. D. 20, ¶ 12; D. 21 at 17.

**IV.     Procedural History**

Huff instituted this action on March 30, 2018, alleging negligence against MBCR. D. 1. MBCR has now moved for summary judgment. D. 17. The Court held a hearing on the motion and took the matter under advisement. D. 25.

**V.      Discussion**

    **A.      Statute of Limitations**

MBCR argues that Huff failed to file this action within the applicable statute of limitations period because the statute of limitations began to run on either January 21, 2015 or February 4, 2015, the dates on which Huff was informed by his doctors that he had right carpal tunnel syndrome. D. 18 at 7-10. Huff argues that the statute of limitations did not begin to run until sometime on or after May 29, 2015, when Huff had his first carpal tunnel release surgery and first considered that his work for MBCR could be the cause of his carpal tunnel syndrome. D. 21 at 14.

FELA provides that "no action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued." 45 U.S.C. § 56. Where a plaintiff's injury is not the result of a specific, identifiable accident, but is the result of ongoing exposure to certain harmful conditions over a period of time, courts have applied the "discovery rule," see Urie v. Thompson, 337 U.S. 163 (1949), to determine when a cause of action accrues. In Urie, a plaintiff brought a claim under FELA alleging that he had contracted silicosis, a lung disorder, as a result of prolonged exposure to silicon dioxide during his twenty-eight years as a foreman working for a railroad company. Id. at 166. The Court rejected the argument that the statute of limitations began to run when plaintiff first contracted silicosis, which occurred before plaintiff could have known that he had the disease. Id. at 170. Instead, the Court ruled that the statute of

4

limitations began to run "only when the accumulated effects of the deleterious substance manifested themselves." Id. (quoting Associated Indemnity Corp. v. Indus. Accident Comm'n, 124 Cal. App. 378, 381 (1932)). The Supreme Court addressed the issue again in United States v. Kubrick, 444 U.S. 111, 120 (1979), rejecting the argument that claims do not accrue "until the plaintiff learns that his injury was negligently inflicted," but noting that a plaintiff "armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. Id. at 123. The First Circuit has interpreted Urie and Kubrick to mean that the statute of limitations in FELA cases begins to run when a plaintiff knows, or should know, of both the injury and the cause of the injury. Albert v. Maine Cent. R.R. Co., 905 F.2d 541, 544 (1st Cir. 1990) (citing a line of cases from other Circuits regarding same); Granfield v. CSX Transp., Inc., 597 F.3d 474, 482 (1st Cir. 2010).

"Application of the discovery rule ordinarily involves questions of fact and, therefore, in most instances will be decided by the trier of fact" and "[d]etermining when a plaintiff had notice of the likely cause of her injury is one example of such a determination." Granfield, 597 F.3d at 482 (quoting Genereux v. Am. Beryllia Corp., 577 F.3d 350, 360 (1st Cir. 2009)). Huff and MBCR disagree about when Huff knew or should have known that his carpal tunnel syndrome could have been caused by his work at MBCR. MBCR argues that Huff should have known once he was diagnosed with carpal tunnel syndrome and Huff argues that he did not consider that his work could be the cause of the carpal tunnel syndrome until after he had his initial carpal tunnel release surgery in May 2015. Similar to the circumstances in Granfield, 597 F.3d at 483 (finding no error in declining to dismiss the case on statute of limitations grounds), Huff further states that he did not discuss the potential causes of his injury with his orthopedic surgeon prior to his initial surgery on May 29, 2015. D. 21 at 14. Where there is a factual dispute as to when the plaintiff knew or

5

should have suspected that the cause of his injury was work-related, summary judgment is not warranted, but the statute of limitations defense remains for trial. See Genereux, 577 F.3d at 360; see also Cox v. Mass. Dept. of Corrections, No. 13-10379-FDS, 2018 WL 1586019, at *22 (D. Mass. Mar. 31, 2018).

### B. Plaintiff's Claim of Negligence Under FELA

Huff alleges that MBCR was negligent in failing to "provide him with adequate manpower and assistance to safely perform the assigned tasks . . . for failing to provide [him] with anti-vibration gloves to allow him to safely work with vibrating tools . . . [and] in failing to provide him with any safety training as to carpal tunnel syndrome and ways to prevent it." D. 21 at 16.

FELA makes railroad companies liable for "injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C. § 51. FELA is a broad remedial statute and, therefore, has generally been given a liberal construction. Robert v. Consol. Rail Corp., 832 F.2d 3, 6 (1st Cir. 1987). FELA, however, does not impose strict liability on employers and plaintiffs must still prove the "common law elements of negligence: duty, breach, foreseeability, and causation." Id.; Stevens v. Bangor & Aroostook R.R. Co., 97 F.3d 594, 598 (1st Cir. 1996). "Specifically, [a plaintiff] must show that his employer breached its duty to maintain a safe workplace, that he was harmed by that breach, and that the harm was foreseeable." Stevens, 97 F.3d at 598. "[U]nder FELA, negligent employers cannot escape liability merely because other causes contribute to the injury." Robert, 832 F.2d at 6.

Liability attaches under FELA where a defendant railroad "knew, or by the exercise of due care should have known, that prevalent standards of conduct were inadequate to protect petitioner

6

and similarly situated employees." Urie, 337 U.S. at 178 (internal quotations omitted). In this case, Huff must show that MBCR could have foreseen that the conditions of Huff's work could lead to the carpal tunnel syndrome that Huff suffered. Had this risk been foreseeable, MBCR would have a duty to take steps to prevent the resultant injury. Huff asserted that his injury was caused by "inadequate manpower, inadequate equipment and/or gloves" and exposure to "excessive repetition, force, awkward posture and vibration." D. 18-2 at ¶ 6. Huff argues that MBCR was negligent in failing to provide training about carpal tunnel syndrome and the ways to avoid it. D. 21 at 16. MBCR contends that Huff's claim is deficient because he has not disclosed a railroad liability expert in support of his claims. D. 18 at 11. Although the absence of such expert testimony may diminish the strength of Huff's claim in this regard at trial, the Court cannot say that Huff's showing is insufficient here to overcome summary judgment, where Huff, a MBCR trackman and machine operator for over seven years, has testified about practices employed there that exposed him to excessive repetition, force, awkward posture and vibration, D. 18-2 at 2, and given the "low threshold" required for him to overcome the summary judgment motion. Crowther v. Consolidated Rail Corp., No. 09-CV-10334-MAP, 2010 WL 3938315, at *4 (D. Mass. Oct. 5, 2010) (citing not only plaintiff's ergonomics experts, but testimony from plaintiff, "a track laborer with thirty years' experience" as to defendant's negligence in denying summary judgment). Accordingly, Huff has sufficiently raised a factual issue as to whether MBCR could have foreseen that Huff's work could result in his injury and failed to provide the proper training and equipment to prevent the injury. See Meachen v. Iowa Pac. Holdings, LLC, No. 13-CV-11359-LTS, 2016 WL 7826660, at *3 (D. Mass. Feb. 10, 2016) (denying summary judgment where plaintiff's FELA claim was based on "failure to provide him proper training and instruction, proper equipment and proper supervision").

*1.     Causation*

"[U]nder [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." Conrail v. Gottshall, 512 U.S. 532, 543 (1994) (quoting Rogers v. Missouri Pac. R. Co., 352 U.S. 500, 506 (1957)); Moody v. Maine Cent. R.R. Co., 823 F.2d 693, 695 (1st Cir. 1987).

In support of his claim that his carpal tunnel syndrome was caused by his work for MBCR, Huff has submitted an affidavit by his surgeon, Dr. Muppavarapu, that stated that "Huff's work as a trackman at MBCR, in whole or in part, caused or contributed to the development of his carpal tunnel syndrome . . . Huff's heavy physical labor at the railroad, in whole or in part, was a contributing factor in the development of his carpal tunnel syndrome." D. 22, ¶ 9. Dr. Muppavarapu stated this opinion "upon a reasonable degree of medical certainty." Id.  MBCR argues that the Court should not consider the late-filed affidavit, particularly since it was filed after the expert disclosure deadline, after Huff's opposition was filed and the day before the summary judgment motion hearing. D. 26 at 2-3; see D. 15, 22. Although Huff's counsel's explanation of the delay at the motion hearing may explain the cause for some delay in getting the affidavit from the doctor, it does not necessarily the full breadth of delay, particularly when counsel had sufficient advance notice of the filing deadlines. See D. 15 (scheduling order entered on December 10, 2018).  Even so, the Court declines exclusion of the affidavit, particularly as the Court had the opportunity to consider MBCR's substantive opposition to it both at the motion hearing and in its objection to the its filing. D. 26. Moreover, MBCR does not contest the evidentiary value of the affidavit as to causation, stating that "it may in fact raise a factual issue relative to medical causation," D. 26 at 3, even as MBCR continues to argue that it fails to save the untimeliness of

Huff's complaint (an argument, which for the reasons stated above, the Court has rejected). The Court concludes that Dr. Muppavarapu's affidavit raises at least a factual issue as to whether MBCR's alleged negligence caused Huff's carpal tunnel syndrome. Crowther, 2010 WL 3938315, at *4.

**VI.    Conclusion**

For all of the foregoing reasons, the Court DENIES MBCR's motion for summary judgment, D. 17.

**So Ordered.**

/s/ Denise J. Casper
U.S. District Judge